SINCLAIR PRAIRIE OIL CO. v. HARVEY.

SINCLAIR REFINING CO. v. SAME.

No. 30802.   March 16, 1943.

Rehearing Denied May 25, 1943.

*137 P. 2d 542.*

Edward H. Chandler. Summers Hardy, W. H. McBrayer, Milton W. Hardy, and H. O. Bland, all of Tulsa, for plaintiffs in error.

Duke Duvall, of Oklahoma City, and J. W. Levin, of Seminole (Dudley, Hyde, Duvall & Dudley, of Oklahoma City, of counsel), for defendant in error.

BAYLESS, J. O. L. Harvey, d/b/a O. L. Harvey Truck Service, sued Sinclair Prairie Oil Company, a corporation, in the superior court of Seminole county, to recover certain alleged undercharges that Harvey claimed were due him from company for transporting property of company. A second cause of action against Sinclair Refining Company, a corporation, was set out in the amended petition, and the trial involved similar issues between Harvey and the respective defendants. Harvey obtained judgment, and defendants appeal.

The transportation charges for which Harvey sues defendants arose under the terms and provisions of a tariff put into effect by Harvey on February 12, 1939, MF - I.C.C. No. 4. This tariff was based on the distance property was transported, and the rates varied according to the miles.

All parties agree that the rates applicable to the transporting done by Harvey for defendants must be read from the published tariff, and particularly this portion:

"(1) To determine the rates applicable between any two given points, use the shortest distance, origin to destination, *via* highways shown in *Mileage Guide No. 3*, G. B. Holman, Agent, MF-I.C.C. No. II, supplements thereto and reissues thereof.

"(2) In the event movement is from or to off-highway locations, or from or to points not published in the Mileage Guide No. 3, referred to in Paragraph One (1) of this item, the actual mileage

*via* the shortest practical route shall be used except that Mileage Guide No. 3 will be used for such portions of the distance as provided for therein. . . . "

Defendants state the issue thus:

"A correct determination of this appeal involves a construction of paragraphs '(1) and (2)' above quoted. It is to be noted that in paragraph (1) it is expressly provided that in order to determine the rates applicable between any two given points *the shortest distance origin to destination via highways shown in Mileage Guide No. 3, G. B. Holman, Agent, MF-I.C.C. No. 3 shall be used"*

—and state their contention thus:

"It is the contention of the defendants that paragraph 1 and 2 of the rules of plaintiff's tariff MF-I.C.C. No. 4, page 4, requires the use of the shortest distance, origin to destination, *via* highways shown in Holman's Mileage Guide No. 3, and that any method of calculation which does not produce the shortest distance, origin to destination, is not permitted."

Plaintiff states the issue thus:

"Therefore, the question before the trial court was whether the words in Paragraph 2: 'except that Mileage Guide No. 3 will be used for such portions of the distance as provided for therein' required the application of the entire guide, including the rules which are a part of it, or whether the defendants were at liberty to use the maps therein or any distances shown in the guide, without being governed by the rules."

Plaintiff further states that since the property transported was from and to leases situated on off-route of off-highway points, paragraph 2 quoted in the second preceding paragraph should receive particular attention.

Since the entire controversy revolves around "Mileage Guide No. 3, G. B. Holman," we think it advisable to incorporate in this opinion some description thereof. It is a paper-bound book, containing 102 numbered pages, including the front cover, divided as follows, page 1 to 30a, and pages 1 to 72. Pages 2a and 3a contain the rules for interpreting the matter contained in the book, but the remainder of the pages to 30a do not concern us. Thereafter, pages 1 to 6 include a "Standard Highway Mileage Chart" whereon is shown the distances between many of the larger cities and towns in the United States. Beginning with page 7 and including page 28, appear 18 sectional maps, arranged to cover the entire United States, and designed to show state boundaries and many of the cities and towns in each state. From each of the towns are projected thin black lines running to some nearby towns, with the distances marked between towns and between junction points of these lines where they intersect between towns. These black lines do not purport to represent marked highways, but in many instances they parallel the routes of highways, although in some instances there are no lines between given towns where there are highways between such towns. In the Mileage Guide these are referred to as: "Mileage Maps of the United States (18 sections)," and one of the expert witnesses referred to them as "sketch maps." Following these and beginning with page 29 and including page 72, appear standard highway maps of the several states of the Union, being such maps as are usually obtainable at any filling station. These are far more complete in all details than the "Mileage Maps," and are referred to in the book as "Maps of Individual States," and are the so-called "highway maps" referred to by defendants.

The evidence in the record consists of stipulations, and the testimony of certain witnesses, and certain exhibits. There is no dispute between the parties concerning the property transported, nor its points of origin and destination. The sole dispute between the parties relates to the determination of the proper rate to be charged therefor. One of the exhibits introduced consists of a series of calculations relating to a number of these items wherein the number of miles and the rate charged by Harvey is set opposite the number of miles and the rate that should have been

charged as contended by defendants, with the difference, if any, set out. In some of these it resulted in overcharges and in some of undercharges, according to defendants' contention. We do not find that the parties have taken up each individual haul and shown the routes and distances over which the property was hauled and the basis upon which Harvey made his charges, as contrasted with the routes and distances and rates which defendants contend should have been used.

Some of the expert witnesses who testified for each side gave testimony, based upon hypothetical instances, which the parties seem to agree suffices to show the differences between the parties. One such instance offered and discussed will be given here as we think it sufficient to illustrate the differences between the parties. Reference is had to sectional map No. 10, appearing at page 20 of the book covering much of Oklahoma. On this mileage map or sketch map appears the town of Marlow, Okla., and directly east of it the town of Wynnewood, Okla. On the mileage map or sketch map there is no line drawn between these two towns nor any distance indicated between the two shown on a relative straight line or highway running east and west. When reference is had to the highway map of the State of Oklahoma appearing at page 58, it appears that there is a highway between these two towns and the distance is about 40 miles. Witnesses for Harvey testified that in calculating the cost for hauling property between Marlow and Wynnewood reference would be had to sectional map No. 10, and the rates would be charged on the basis of having moved the property north from Marlow to Chickasha, northeast from Chickasha to Norman, and generally south again to Wynnewood; or south from Marlow to Comanche, east and somewhat south to Ardmore and thence north to Wynnewood, the first being a distance of about 112 miles and the latter a distance of about 113 miles. This, of course, results in a charge based upon either of these longer distances, and wholly ignores the

realities of the situation which would permit the hauling of goods from Marlow directly east to Wynnewood by way of a recognized state highway, a short distance of only 40 miles. Harvey's witness testified that the charge would be so made even though the trip was made directly east and west via highway.

Harvey insists that the interpretation of the rules above given places the emphasis upon the mileage map, and says that when off-highway hauling is done the distance to the nearest point on mileage map is found, and the distance between points on the mileage map is then used, and that reference is not to be had to a highway map until no point or points can be found and used on the mileage map. Sinclair contends that the emphasis is upon "the shortest distance," and this can be determined, and must be accepted, from anything that appears within the book, including mileage chart, mileage map, state highway maps or vicinity maps.

We are of the opinion that Sinclair's contention is correct. In addition to the portion of the tariff above quoted with respect to the method of determining the shortest distance, we notice that rule No. 1, appearing on page 2a of mileage book No. 3, provides:

"Distance from point of origin to destination shall be determined from the mileage chart, mileage maps, vicinity maps, and maps of individual states . . . contained herein."

In our opinion, the rate to be charged is the lowest rate that can be determined from a reference to any of the mileage charts, mileage maps, vicinity maps, and maps of the individual states based on "the shortest distance, origin to destination"; and this allows for the addition to the distance, calculated on any of these maps, of the distance which property is hauled from or to off-highway locations. On this last point, there seems to be no difference between the parties, it being admitted that much of this property was hauled from points off any highway locations on any maps shown.

We notice that there is some unanimity of opinion among the expert witnesses who testified for Harvey, and especially those who have some connection with the Interstate Commerce Commission, that the method of calculating charges used by Harvey is in accord with what they consider recognized freight hauling charge practices. If the individual state highway maps did not appear in this record, and if there was no reference in the rules of interpretation appearing in front of the mileage guide to the use of these maps, we could understand the contention of Harvey. But since these maps are included and are referred to, and since they clearly demonstrate the excessive character of the charges made based on the mileage map or sketch map alone, we are not constrained to follow the interpretation placed on them by the experts, but rather choose to interpret the terms and provisions of the published tariff in a logical although literal manner. We observe that the term "practical route" is used, but no issue is made of that herein.

The judgment of the trial court is reversed and the cause is remanded, with directions to take additional proceedings not inconsistent with the views herein expressed.

CORN, C. J., and OSBORN, HURST, and ARNOLD, JJ., concur.